UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61797-CIV-ZLOCH/Snow

ALBERTO ELIAKIM,

Petitioner,

v.

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

Respondent.

---

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on the petitioner Alberto Eliakim's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, which was referred to United States Magistrate, Lurana S. Snow, for report and recommendation. The petition was filed by counsel, utilizing the pre-printed § 2254 form with no accompanying memorandum of law. In his petition, the petitioner asserts one ground for relief: denial of confrontation and cross examination as well as due process of law.

In support of his claim, petitioner contends that he sought to cross examine Kelly Martelo, a testifying co-defendant, about her numerous prior drug dealings with Ana Jorquera, another co-defendant who was tried with the petitioner. The petitioner's defense was that he was merely present at the scene of the offenses, and he contends that the trial judge's limitation of his

cross examination of Ms. Martelo violated the holding of Holmes v. South Carolina, 547 U.S. 319 (2006). The respondent asserts that the trial judge acted within his discretion in excluding the proposed cross examination as irrelevant.

## I. PROCEDURAL HISTORY

The petitioner was charged by information in Florida Circuit Court with trafficking in amphetamine (Count I), possession of 3,4 methylenedioxymethamphetamine (Count II) and possession of amphetamine (Count III). The petitioner proceeded to trial and was found guilty of Counts I and II and not guilty of Count III. The petitioner was sentenced to ten years imprisonment on each of Counts I and II, the sentences to run concurrently.

The petitioner appealed, asserting numerous grounds, including error by the trial judge in restricting cross examination of co-defendant Kelly Martelo on the basis that the proposed cross examination would prejudice the co-defendant. The petitioner's brief on appeal cited to only one federal case, in connection with a discussion of whether antagonistic defenses require a severance: "the Appellant, since the Florida Supreme Court in McCray looked so heavily at Federal Cases, would direct the Court to the last decision on the issue by the United States Supreme Court in Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)." (Appendix, Ex. D at 25.)

On March 10, 2004, the Fourth District Court of Appeal affirmed the judgment of the trial court, holding that the

precluded cross examination was irrelevant to the charged offenses. Eliakim v. State, 884 So.2d 57 (4th DCA 2004). The petitioner's motion for rehearing was denied, and on March 3, 2005, the Supreme Court of Florida denied the petitioner's petition for review. The United States Supreme Court denied certiorari on October 3, 2005.

On May 24, 2006, the petitioner filed a motion for post-conviction relief, arguing that the trial court should vacate his conviction based on the improper restriction of cross examination. In support of this request, the petitioner cited the intervening decision of Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

The respondent argued that this claim was not a proper subject for a post-conviction motion, but was required to be raised on direct appeal. The respondent stated, "Defendant now presents a Rule 3.850 motion in which he is essentially trying to relitigate the claims previously presented on appeal by asserting the rulings of this Court and the Fourth District Court of Appeals are contrary to the Constitution of the United States." (App., Ex. L, Attachment at 3.)

The trial judge denied the motion for the reasons cited by the respondent, attaching a copy of the respondent's pleading to its Order. (App., Ex. L.) The Fourth District Court of Appeal affirmed and mandate issued on October 26, 2007.

The instant petition for writ of habeas corpus was filed on December 10, 2007. The respondent concedes that the petition

was timely filed. However, the respondent contends that the petitioner did not exhaust his available state remedies by failing to present his claim in federal constitutional terms.

## II. FACTS

The petitioner has not filed a statement of facts, and the undersigned infers from this that the petitioner does not contest the respondent's summary of the evidence presented at the petitioner's trial. Accordingly, the undersigned adopts the respondent's Statement of Facts, as follows[1]:

> Detective Marill with the Sunrise Police Department testified that he is assigned to the southeast region of a federal task force (T. 16). He testified that Detective Goldstein with the Coral Springs Police Department told him that he had an informant named Jason Cannon who indicated that he could purchase a large amount of Ecstacy pills from a Kelly Martelo, who lives in Sunrise (T. 17).
>
> Detective Marill initially told the informant to purchase a sample pill which the informant picked up from Ms. Martelo's residence. (T. 18) Once this was accomplished, the informant ordered one thousand Ecstasy pills from Ms. Martelo (T. 18-19) On the day this transaction was to take place, Ms. Martelo called the informant and told him that she would have them within an hour (T. 45-46).
>
> Subsequently, the officers followed Ms. Martelo to Ana Jorquera's residence in North Lauderdale (T. 24-25). She picked up Ms. Jorquera and went back to her (Ms.

[1] The undersigned has divided some of the longer paragraphs for ease of reading; otherwise, the Statement of Facts has been reproduced verbatim, with footnotes omitted.

Marterlo's) residence (T. 25) Ms. Martelo went into her residence, and Ms. Jorquera left in Ms. Martelo's vehicle and went to an Albertsons, driving on Oakland Park (T. 143) where she made a call from a pay phone (T. 26-27). Then Ms. Jorquera cut through the parking lot at Albertsons and drove Northbound several blocks on Nob Hill Road, made a U-turn and drove back to the Albertsons parking lot where she met Petitioner. (T. 27, 143-144). Petitioner was driving a BMW (T. 28).

Petitioner got into the vehicle driven by Ms. Jorquera, and they had a conversation for three to five minutes (T.28). Petitioner then returned to his vehicle, got a yellow envelope package out of his trunk and gave it to Ms. Jorquera through the passenger window (T.29). Then Petitioner returned to his vehicle and followed Ms. Jorquera back to Ms. Martelo's residence (T.29). Ms. Jorquera went into Ms. Martelo's residence with the yellow envelope given to her by Petitioner (T. 30-31), while Petitioner parked in an adjacent complex, exited his vehicle and walked up and down the street where he kept a constant eye on Ms. Martelo's residence (T. 30, 58).

When Ms. Jorquera went into the residence, the police executed the search warrant on Ms. Martelo's residence and simultaneously detained Petitioner (T. 31, 63). Although Detective Marill initially testified that Petitioner was detained by Detective Clyde Parry and Special Agent Tom Masters (T. 31), he clarified later that he and three or four other officers were the ones who initially detained Petitioner and that he earlier thought the question was who was maintaining surveillance on Petitioner (T. 61-62). He and the other officers told Petitioner to get down on the ground at gunpoint (T. 65).

After Petitioner was detained, Detective Marill went into the Martelo residence (T. 63). He did not recall who actually took Petitioner into custody (T. 63) but indicated that it was Detective Parry who read Petitioner his rights (T. 63). He also

testified that Detective Parry searched Petitioner's vehicle where he found more Ecstacy pills (T. 66).

Detective Goldstein testified that when the officers entered Ms. Martelo's residence, he and other officers pulled up to Petitioner and stopped him (T. 101). He indicated that Detective Parry was in the group, and Detective Marill was in the car with him (T. 101). As soon as they established that Petitioner had no weapons, he and Detective Marill got back in the car and went to Ms. Martelo's residence (T. 101-102).

Detective Parry of Coral Springs testified that he is deputized as a DEA (Drug Enforcement Administration) task force officer (T. 137). The investigation that resulted in Petitioner's arrest was part of a larger federal task force investigation (T. 138) for the DEA (T. 156). He also testified that Detective Marill from Sunrise was working in conjunction with everybody (T. 161). Detective Parry testified that there is a mutual aid agreement between Coral Springs and Sunrise, which allows officers to work outside their jurisdiction (T. 161-162). He also testified that the pact did not require that the mayor or city attorney sign off for purposes of invoking the pact for this specific investigation (T. 162).

Detective Parry testified that he detained Petitioner (T. 139). However, Detective Parry explained that when the takedown was ordered on the search warrant of Ms. Martelo's residence, several vehicles converged on Petitioner (T. 148). A Sunrise unit was among these vehicles as was Sergeant Muratore from Sunrise (T. 149). The squad car blocked Petitioner's ability to move his vehicle (T. 169). Tom Masters from the DEA was also with the officers who detained Petitioner (T. 149); however, Detective Marill testified that Masters was only there for backup (T. 63). The officers had their guns drawn until Petitioner was taken from his vehicle and handcuffed (T. 176).

> Petitioner had been handcuffed and was sitting at the back rear of his vehicle when Detective Parry walked up to Petitioner (T. 149). Detective Parry identified himself, told Petitioner that they were investigating a crime and Mirandized Petitioner (T. 150). On cross-examination, Detective Parry insisted that his intention at this time was to merely detain, not arrest, Petitioner to conduct an investigation (T. 174-175).
>
> Then Detective Parry asked Petitioner if he could search Petitioner's vehicle, and Petitioner consented to the search (T. 155). Detective Parry recovered 20 Ecstasy pills from the vehicle (T. 155). Detective Parry testified that at that point, Petitioner was placed under arrest and transported by the Sunrise road unit to the Sunrise Police Station (T. 156).

(Resp., DE 5, 7-11.)

With regard to the testimony of Kelly Martelo, the response states:

> Ms. Martelo testified that when she told Ana Jorquera that she needed a sample pill to give to the confidential informant that she drove Ms. Jorquera to Taco Bell, where Ms. Jorquera met Petitioner, who was waiting, introduced him to Ms. Martelo and then gave Ms. Martelo the sample Ecstasy pill (T. 48-51). Further, Ms. Martelo testified that when Ms. Jorquera came back to her apartment with the pills, she saw Petitioner following her and told Ms. Jorquera to call Petitioner and tell him to leave (T. 71-74). During the phone conversation between Petitioner and Ms. Jorquera, Ms. Martelo heard Petitioner tell Ms. Jorquera to get out of the house because the police were surrounding the area (T. 231). Moreover, the officers observed Petitioner give Ms. Jorquera the envelope containing Ecstasy pills, which she took into Ms. Martelo's apartment (T. 340-344). Finally, Ms. Martelo also testified that after she was arrested and was at the Sunrise Police

> Station, Petitioner told her not to say anything (T. 84).

(Resp., DE 5, 14-15.)

According to the response, when counsel for the petitioner sought to cross examine Ms. Martelo about prior drug dealings between Martelo and co-defendant Jorquera, the following proffer was obtained:

> Ms. Martelo proffered that she and Ms. Jorquera had been selling each other drugs for three to four years and that the only time she saw Petitioner (Ms. Jorquera's boyfriend) was at a funeral and when Ms. Jorquera took her to get the sample pill related to this transaction (T. 94-98). Ms. Martelo also proffered that during this period Ms. Jorquera had another boyfriend, Rourke, who was the recipient of the drugs she was selling to Ms. Jorquera (T. 98).

(Resp., DE 5, 13)

## III. RECOMMENDATIONS OF LAW

### A. Exhaustion of State Remedies

Pursuant to 28 U.S.C. § 2254(b)(1), habeas relief cannot be granted unless it appears that:

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The purpose of the exhaustion requirement is to afford the State "the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). If such opportunity is to be a meaningful one, the state courts "must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a similar state-law claim was made." Zeigler v. Crosby, 345 F. 3d 1300, 1307 (11th Cir. 2003), cert. denied, 543 U.S. 842 (2004). A petitioner "must additionally articulate the constitutional theory serving as the basis for relief." Id.

In the instant case, the respondent contends that the petitioner failed to exhaust his available state remedies because he did not present his claim to the state courts in federal constitutional terms. (Resp., DE 5, 14-15.) On appeal, the petitioner's discussion of the issue of the limited cross examination of Kelly Martelo addressed the question of whether permitting the requested cross examination would have required the petitioner's trial to be severed from that of co-defendant Jorquera. In advancing his argument that severance was not required, the petitioner did cite one federal case. However, in the petitioner's discussion of whether he had a right to pursue the proposed line of questions, he relied solely on Florida law.

In his motion for post-conviction relief under Rule 3.850, the petitioner focused on the dissenting opinion of Judge Farmer in Eliakim v. State, 884 So.2d 57 (4th DCA 2004), and the holding of Holmes v. South Carolina, 547 U.S. 319 (2006), a case which dealt with the constitutionality of a state statute which limited cross examination of witnesses. However, the state court ruled that the petitioner's claim was barred because it was, or should have been, raised on direct appeal.

Although the question is a close one, for purposes of this Report and Recommendation, the undersigned finds that the state courts were alerted that the petitioner was raising a federal constitutional claim in connection with the ground for relief raised in the instant motion. Accordingly, the petitioner has exhausted his available state remedies and his substantive claim may be considered by this Court.

**B. Limitation of Cross Examination**

The petitioner's sole ground for relief is his claim that the trial judge's limitation of his cross examination of Ms. Marterlo violated his federal constitutional rights to confrontation of witnesses and to due process of law.

Review of the petitioner's claims of ineffective assistance of counsel is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief for a claim adjudicated on the

merits in state court is permitted only where the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This limitation of federal habeas review was designed "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 1849, 152 L.Ed.2d 914 (2002), citing Williams v. Taylor, 529 U.S. 362 (2000). In these cases, the Supreme Court established the parameters of review under § AEDPA, holding that under the first prong of § 2254(d)(1), "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." Bell, 535 U.S. at 694, 122 S.Ct. at 1850, citing Williams, 529 U.S. at 405-406, 120 S.Ct. at 1520.

As to the second prong of § 2254(d)(1), "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principles from our decisions but unreasonably applies it to the facts of the particular case." Bell, 535 U.S. at 694, 122 S.Ct. at 1850 citing Williams, 529 U.S. at 407-408, 120 S.Ct. at 1520. The court

emphasized that the "focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694, citing Williams, 529 U.S. at 409-410, 120 S.Ct. 1520.

The AEDPA also bolsters the presumption of correctness of state court factual findings. 28 U.S.C. § 2254(e)(1) provides:

> a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption by clear and convincing evidence.

In the instant case, the petitioner's claim was rejected by the Fourth District Court of Appeal in a published opinion, Eliakim v. State, 884 So.2d 57 (4th DCA 2004). In that opinion, the court quoted the trial judge's basis for precluding the petitioner from cross examining Ms. Martelo on her prior drug dealings with the co-defendant, Ms. Jorquera:

> The ability to cross-examine does not preclude the court's ability to determine what's relevant and what is not relevant. And the court does not find the evidence that you're trying to bring up by way of prior dealings to be relevant to the proceedings. What Mr. Eliakim is being accused of has nothing to do with the prior relationship of Ms. Jorquera and Ms. Martelo or Ms. Martelo and this gentleman by the name of Jason.

Id. at 60.

The court then pointed out that a trial judge has "broad discretion in determining limitations to be placed on cross

examination," and "a judge's decision to admit or exclude evidence will not be overturned absent a showing of an abuse of discretion." Id. The court then noted the petitioner's argument that "evidence of previous joint criminal activity between Martelo and Jorquera, which did not include him, would have supported his defense theory that the two women committed the present drug offense without him." Id.

The court held that the trial judge properly rejected this argument because evidence of the co-defendants' drug dealing history was inadmissible under sections 90.404(1) and (2), Florida Statutes (dealing with the inadmissibility of evidence of a character trait to prove that a person acted in conformity with it on a particular occasion). Id. The court stated, "Appellant was unable to demonstrate how this evidence bore any issue material to whether *he* participated in *this* drug transaction or how it cast reasonable doubt on his own guilt." Id. at 61 (emphasis in original). Additionally, "considering the evidence admitted regarding appellant's active participation in the charged offenses, we find that there is no reasonable possibility that the errors complained of contributed to appellant's conviction." Id. at 63.

The petitioner contends that the Supreme Court's decision in Holmes v. South Carolina, 547 U.S. 319 (2006), compels a different result. That case decided the question of "whether a criminal defendant's federal constitutional rights are violated by an evidence rule under which the defendant may not introduce proof

of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." Id. at 321.

In analyzing this issue, the court noted that although the Constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326. Additionally, the Constitution permits judges to exclude evidence that is repetitive or only marginally relevant. Id. at 326-27.

As a specific example of this principle, the Court pointed to rules regulating the admission of evidence proffered by a criminal defendant to show that someone else committed the crime with which the defendant was charged. The Court observed that such evidence frequently is so remote and lacks such connection with the crime that it is excluded. Since rules regulating the admission of such evidence are widely accepted, their validity was not at issue in the case before the Court. Id. at 327.

The Court held that the rule which was before the Court, dealing with the admissibility of evidence of third party guilt where the prosecution has presented forensic evidence which supports a guilty verdict, was arbitrary. The Court reasoned that "by

evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt. Id. at 331. Accordingly, the Court concluded that the rule violated a criminal defendant's right to have a meaningful opportunity to present a complete defense, and could not stand. Id.

In the case *sub judice*, the undersigned agrees with the respondent that Holmes lends no support to the petitioner's claim. The Supreme Court specifically stated that its holding would have no application to rules regulating the admission of evidence proffered by a defendant to prove that someone else committed the crime. Moreover, nothing in Holmes limits a trial judge's discretion to exclude evidence deemed to be irrelevant. Id. at 327.

The trial judge's decision to preclude the petitioner from cross examining Ms. Martelo on her prior dealings with Ms. Jorquera was not an abuse of discretion, and is supported by common sense. The fact that Ms. Martelo and Ms. Jorquera sold drugs to one another in the past does not suggest that the petitioner was not involved in the offenses with which he was charged or, for that matter, in the prior transactions between the two women. The proposed cross examination questions properly were excluded as irrelevant.

The petitioner has failed to demonstrate that the decision of the trial judge, affirmed by the Fourth District Court of Appeal, was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. Therefore, the State court decision should not be

disturbed and the petitioner is not entitled to federal habeas relief.

## IV. CONCLUSION

This Court has reviewed carefully the record in this matter as well as the applicable law, and being fully advised in the premises, it is hereby

RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982) (en banc).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 12th day of August, 2008.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Fred Haddad, Esq.
AAG Melynda Melear (WPB)